UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

In re:

Kenneth W. Cinq-Mars
& Gisele R. Cinq-Mars,

Debtors

Chapter 13
Case No. 16-10654

## ORDER ON DEBTORS' OBJECTION TO PROOF OF CLAIM

On September 20, 2017, Camden National Bank filed a Notice of Postpetition Mortgage Fees, Expenses, and Charges as a supplement to its Proof of Claim for $24,700.95 ("Claim No. 6"), which is secured by a mortgage on the debtors' residence. Through that Notice, the Bank asserts that it is entitled to recover, from the debtors or against the debtors' residence, attorney fees of $8,689.81 that the Bank incurred between January 5, 2017 and August 31, 2017; an appraisal fee of $475.00 that the Bank incurred on May 15, 2017; and post-petition payments due from October 14, 2016 to August 14, 2017 in the amount of $2,282.06.

The debtors object, asserting that the attorney fees and appraisal fee (the "Fees") may not be added to Claim No. 6 because the Bank is undersecured on that claim, rendering the addition of Fees to the claim impermissible under 11 U.S.C. § 506(b).[1] The debtors also contend that the Fees are not recoverable under its agreements with the Bank and applicable nonbankruptcy law because the Bank failed to give the notice that the debtors' mortgage requires. The debtors ask the Court to construe their agreements with the Bank against the Bank, as contracts of adhesion.

---

[1] The debtors' objection was filed at the direction of the Court. *See* [Dkt. No. 40]. For the purposes of this order, the objection is treated as a motion under Fed. R. Bankr. P. 3002.1(e).

In reply, the Bank argues that 11 U.S.C. § 1322(e) renders the limitations of section 506(b) inapplicable here because the debtors are proposing to cure defaults on Claim No. 6 under 11 U.S.C. § 1322(b)(5).  The Bank contends that both its mortgage and its credit agreement with the debtors give it the right to collect fees that it incurs to protect its interest in the debtors' residence, that the Fees at issue here so qualify, and that the debtors were on notice that the Bank would incur fees to protect its interest when they filed a plan that would have stripped off the Bank's second mortgage.  The Bank also asserts that if it is entitled to the Fees under the mortgage, then the Fees will have to be cured over the term of the plan under section 1322(e), and that if it is instead entitled to the Fees under the credit agreement, then the Fees will be capitalized and payable over the term of the loan.

The Court is first tasked with deciding whether a creditor may recover postpetition fees that it incurs to protect its interest in a residence that serves as security for its claim against a chapter 13 debtor when the debtor is seeking to cure a default on that claim and the claim is not entirely secured by the value of the residence.  If a creditor may recover fees in that scenario, the question is then whether the mortgage and/or the credit agreement between the Bank and the Cinq-Mars entitle the Bank to recover postpetition fees from the Cinq-Mars.[2]

A chapter 13 plan may propose to cure defaults and maintain payments on "any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due."  11 U.S.C. § 1322(b)(5).  If a chapter 13 plan proposes to cure a default on a claim, the amount required to cure the default must be "determined in accordance with the underlying agreement and applicable nonbankruptcy law."  11 U.S.C. § 1322(e).  This provision applies, notwithstanding the provisions of 11 U.S.C. § 1322(b)(2) that

---

[2] As the parties have asked, the Court will determine whether fees are recoverable under the Bankruptcy Code and the agreements between the parties, and will defer consideration of whether the Fees at issue here are recoverable under any other provisions of applicable nonbankruptcy law.

allow a chapter 13 plan to modify the rights of a holder of an unsecured claim, and despite the provisions of 11 U.S.C. § 1325(a)(5) that govern the treatment of an allowed secured claim in a chapter 13 plan. 11 U.S.C. § 1322(e). The calculus of section 1322(e) also trumps section 506(b), which allows the holder of a claim "any reasonable fees . . . provided for under the agreement . . . under which the claim arose," but only to the extent that the claim is secured by property with a value that exceeds the amount of the claim. *See* 11 U.S.C. §§ 506(b), 1322(e).

In this case, the debtors' Second Amended Chapter 13 Plan proposes to maintain payments and cure defaults on Claim No. 6. [Dkt. No. 36.] Under section 1322(e), the amount necessary to cure a default under a chapter 13 plan must be determined by resort to the underlying agreements and applicable nonbankruptcy law, regardless of whether the creditor is undersecured within the meaning of section 506(b). *See* <u>Deutsche Bank Nat. Trust. Co. v. Tucker</u>, 621 F.3d 460, 461-62 (6th Cir. 2010); <u>Smiriglio v. Hudson United Bank</u>, 98 Fed. App'x 914, 915-16 (3d Cir. 2004) (collecting cases). The debtors' argument to the contrary is rejected. The Court will therefore consider the underlying agreements between the debtors and the Bank.

A.     The Mortgage

The Bank asserts that it is entitled to fees under a paragraph of its mortgage with the debtors entitled, in relevant part, "LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY." That paragraph – which refers to the Cinq-Mars as "I" and the Bank as "Lender" – provides:

> If (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. *Lender must give me notice before Lender may take any of these*

> *actions.* Although Lender may take action under this Paragraph, Lender does not have to do so.
>
> To the extent permitted by law, I will owe Lender any amounts, with interest, which Lender spends under this Paragraph. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the Credit Agreement rate. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

(Emphasis added.)

The debtors argue that the Bank failed to give them notice before it paid or otherwise incurred the Fees at issue here, and that the Fees are therefore not recoverable under the mortgage. The Bank, for its part, contends that the debtors were on notice that the Bank would incur fees to protect itself when the debtors commenced a chapter 13 case and proposed a plan that would have harmed the Bank's interests. The Court is not persuaded by the Bank's contention. If the debtors in this case had received actual notice that the Bank would seek to add to their loan balance the attorney and appraisal fees that the Bank incurred in contesting the debtors' First Amended Chapter 13 Plan, that actual notice may have affected the debtors' decision to press for confirmation of that plan over the Bank's objection. The Bank does not assert that actual notice was, in fact, given. As such, the Court concludes that the Bank is not entitled to the Fees at issue here under the terms of the mortgage.

B.   The Credit Line

The Bank also asserts that it is entitled to fees under its credit agreement with the debtors, which refers to the Cinq-Mars as "you" and sometimes refers to the Bank as "we." That agreement provides, in relevant part:

>  **Promise to Pay.**  You promise to pay [the Bank], or order, the total of all credit advances and **FINANCE CHARGES**, together with all costs and expenses for which you are responsible under this Agreement or under the "Mortgage" which secures your Credit Line. . . .
>  **Charges to your Credit Line.**  *We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement*, the Mortgage or any other document related to your Credit Line.  In addition, we may charge your Credit Line for funds required for continuing insurance coverage as described in the paragraph titled "Insurance" below or as described in the Mortgage for this transaction.  *We may also, at our option, charge your Credit Line to pay any costs or expenses to protect or perfect our security interest in your principal dwelling.*  These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your principal dwelling.  If you do not pay your property taxes, we may charge your Credit Line and pay the delinquent taxes.  Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line.  However, we have no obligation to provide any of the credit advances referred to in this paragraph.

(Emphasis added in italics.)

The credit agreement does not contain an advance notice requirement like that set forth in the mortgage discussed above.  The agreement permits the Bank to charge the debtors' credit line to pay for expenses that the Bank incurs to protect its security interest in the debtors' residence.  In the circumstances of this case, the attorney fees and the appraisal fee that the Bank incurred to challenge confirmation of the debtors' First Amended Chapter 13 Plan qualify as expenses incurred to protect the Bank's interests under the terms of the credit agreement.

If the debtors wish to contest the Fees on any grounds other than those addressed in this order, they must file a supplemental objection within fourteen days of this order and provide the Bank with fourteen days to respond.  If a supplemental objection is filed, the Court will set that objection for hearing after expiration of the Bank's deadline to respond.

Dated: November 16, 2017

_____
Michael A. Fagone
United States Bankruptcy Judge
District of Maine